UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

UNITED STATES OF AMERICA, )
Government, )
)
vs. ) Cause No. 2:25-CR-70
JOSEPH LA'BRONE GIBBS, )
Defendant. )

---

SENTENCING HEARING
BEFORE THE HONORABLE MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

FEBRUARY 10, 2026
AMARILLO, TEXAS

---

A P P E A R A N C E S

FOR THE GOVERNMENT:
UNITED STATES ATTORNEY'S OFFICE
500 SOUTH TAYLOR STREET, SUITE 300
AMARILLO, TEXAS 79101
BY: MR. STEPHEN RANCOURT

FOR THE DEFENDANT:
FEDERAL PUBLIC DEFENDER'S OFFICE
600 SOUTH TYLER STREET, SUITE 2300
AMARILLO, TEXAS 79101
BY: MR. JAMES ETHAN COLLEY

FEDERAL OFFICIAL COURT REPORTER:
CHRISTINE M. ORR
205 SE 5TH AVENUE
AMARILLO, TEXAS, 79101
(806)468-3816

PROCEEDINGS RECORDED BY STENOGRAPHY; TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

**INDEX**


**PROCEEDINGS** **PAGE**

DEFENDANT'S MOTION FOR DOWNWARD VARIANCE

COURT'S TENTATIVE DETERMINATION........ 4

**SENTENCING EVIDENCE/ARGUMENT**

ON BEHALF OF THE GOVERNMENT............ 16

ON BEHALF OF THE DEFENDANT............. 16

DEFENDANT'S ALLOCUTION WAIVED.......... 20

**IMPOSITION OF SENTENCE**

COURT'S STATEMENT OF SENTENCE.......... 21

COURT'S STATEMENT OF REASONS........... 29

* * * * * * *

ADVISEMENT OF RIGHT TO APPEAL.......... 34

REPORTER'S CERTIFICATE................. 38


* * * * * * *

[CALL TO THE ORDER OF THE COURT.]

THE COURT: The Court calls criminal action 2:25-CR-00070-Z-BR-1, *United States of America versus Joseph La'Brone Gibbs*. Are the parties ready to proceed?

MR. RANCOURT: Yes, your Honor. Stephen Rancourt appearing on behalf of the United States, ready to proceed.

MR. COLLEY: Ethan Colley for Mr. Gibbs.

THE COURT: Counsel for the United States is present. Counsel for the Defendant is present.

Mr. Gibbs, please acknowledge your presence in court today by stating your full name.

THE DEFENDANT: Joseph La'Brone Gibbs Junior.

THE COURT: And from this point forward, you can participate in the hearing seated or standing, whatever is most comfortable and consistent with the advice of counsel. The Court will make an announcement of its tentative determination on the pending motion for downward variance and then we'll proceed with sentencing.

The Court reviewed Defendant's Motion for Downward Variance as set forth in document number 47. And based on the information contained in the

PSR and the addendum, the Court has tentatively determined that a non-guidelines downward variance to below 46 months is not sufficient pursuant to the factors set forth at 18 U.S.C. Section 3553(a). But the Court made this announcement of its tentative determination to afford Defendant and the Government an adequate opportunity to respond as long as those responses and arguments are not cumulative of written materials and submissions already before the Court. The time for making those additional arguments or responses comes after the Court correctly calculates and announces the advisory guidelines range which at all times must serve as our starting point for any consideration of variance.

Now, Mr. Gibbs, you appeared before United States Magistrate Judge Lee Ann Reno on September 15, 2025. At that time, you entered a plea of guilty to Count II of the Indictment, charging you with being a Convicted Felon in Possession of a Firearm, in violation of 18 U.S.C. Sections 922(g)(1) and 924(a)(8). On that date, you told Magistrate Judge Reno that your guilty plea was knowledgeable and voluntary and supported by an independent basis in fact, containing each of the

essential elements of that offense. You told her that you understood the elements of that offense. You agreed to the accuracy of the factual resume. And you admitted that you committed all essential elements of that offense. Accordingly, on October 6, 2025, this Court entered an order accepting your plea and adjudging you guilty of the crime alleged in that Indictment.

Now, this plea of guilty was entered pursuant to a written plea agreement, a written factual resume and a written plea agreement supplement. And pursuant to Section 6B1.2(a) and Rule 11(c)(1)(A), the Court reviewed your plea agreement, the factual resume, the Indictment and the undisputed facts in the PSR and thereby determined that the remaining charge does adequately reflect the seriousness of your actual offense behavior. So that accepting your plea agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines. All relevant conduct having been taken into consideration in calculating the total offense level. For all those reasons and consistent with Rule 11(c)(4), this Court accepts your plea agreement, and judgment and sentence will be

consistent with that plea agreement.

Now, let's turn to the PSR and the addenda. Mr. Rancourt, did you and your -- did the Government receive a timely copy of both the PSR and the addendum that followed?

MR. RANCOURT: Yes, your Honor.

THE COURT: Other than the Government's written response in document number 43, does the Government have any additional response to the information in the PSR?

MR. RANCOURT: No, your Honor.

THE COURT: And I believe you also filed in document number 48 a response to the motion for downward variance, correct?

MR. RANCOURT: Correct, your Honor.

THE COURT: Other than those responses, does the Government have any untimely responses, requests for clarification or arguments relevant to that PSR?

MR. RANCOURT: No, your Honor.

THE COURT: And does the Government adopt the facts and conclusions set forth in the PSR as modified by that addendum?

MR. RANCOURT: Yes, your Honor.

THE COURT: And Mr. Colley, did you and

your client receive timely copies of the PSR and addendum?

MR. COLLEY: Yes, your Honor.

THE COURT: Did you have a full and complete opportunity to review the PSR and addendum with your client?

MR. COLLEY: Yes, your Honor.

THE COURT: Are you confident that your client fully understands every word, sentence and paragraph of the PSR and addenda?

MR. COLLEY: Yes, your Honor.

THE COURT: Here, Defendant timely filed objections number one through three requesting factual clarifications that do not affect the calculation of the advisory guidelines range. Does Defendant continue to urge those requested factual clarifications?

MR. COLLEY: No, your Honor.

THE COURT: Okay. So objection number one was a reference to a robbery and a description. It correlates to PSR paragraph 24 and 58. Are you hereby waiving objection number one?

MR. COLLEY: Yes, your Honor.

THE COURT: Okay. And objection number two was specific to a factual characterization of a

conviction for unlawfully carrying a weapon in PSR paragraph 47. Is Defendant now knowingly and voluntarily waiving objection number two?

MR. COLLEY: Yes, your Honor.

THE COURT: And regarding objection number three. So that was specific to an alleged gang affiliation appearing in PSR paragraph 66. Does Defendant knowingly and voluntarily waive that objection?

MR. COLLEY: Yes, your Honor.

THE COURT: Okay. So the Court finds that Defendant has knowingly and voluntarily waived the timely filed objections number one, two and three after consulting with competent and effective counsel. And the Court does state for further appellate review that the Court was prepared to overrule those objections had Defendant not waived them, but the Court is not making separate findings because the Court does agree and does find that Defendant has waived objection one, two and three.

Now, I think I may have already asked, but does Defendant have any untimely objections, responses or requested clarifications?

MR. COLLEY: No, your Honor.

THE COURT: And now that you have waived

objections one, two and three, do you -- does Defendant adopt the facts and conclusions set forth in the PSR as modified by that addendum?

MR. COLLEY: Yes, your Honor.

THE COURT: So let's turn to acceptance of responsibility. So pursuant to Section 3E1.1(b), this Defendant may qualify for a one-level deduction upon motion of the Government if he timely assisted authorities in investigating his own misconduct and timely noticed his intent to plead guilty. Here, PSR paragraph 28 states that the Defendant did both. Does the Government agree with the PSR and move this Court to grant the one-level deduction for acceptance of responsibility?

MR. RANCOURT: Yes, your Honor.

THE COURT: The Court grants the Government's motion and will apply the third point for acceptance of responsibility in calculating the advisory guidelines range. Having ruled on Defendant's objections, the Court hereby adopts the remaining findings and conclusions of the presentence report and the addendum in their entirety and, again, the Court finds that Defendant waived the objections number one, two and three. And in any event, the Court would have overruled

those objections.

So now let's turn to the calculation of the advisory guidelines range which must precede the Court's adjudication for the motion for downward variance. So here the Court is considering the relevant federal statutes in the 2025 Guidelines Manual.

Mr. Colley, I compared that newer manual to those in effect on the date of the instant offense and determined use of the newer manual will not violate Defendant's rights or the ex post facto clause. Do you agree that the Court should use and apply the 2025 Guidelines Manual?

MR. COLLEY: Yes, your Honor.

THE COURT: And does the Government agree that we should use that manual which took effect on November 1st?

MR. RANCOURT: Yes, your Honor.

THE COURT: The Court will use and apply the 2025 manual. Now, before correctly calculating and announcing the advisory guidelines range, the Court will note the considerable impact of the plea agreement in this case. Here, Defendant could have faced a similar sentencing exposure had he been convicted of Count I of the Indictment. Also, the

statutorily authorized maximum sentence in this case is up to 15 years. Additionally, the statutory maximum fine is up to $250,000. So this Court finds that defense counsel capably and effectively negotiated a plea agreement that reduced Defendant's possible sentencing exposure in this case.

Now, having considered the probation officer's calculations and conclusions in the PSR and addendum and Defendant now having waived his objections to that PSR, the Court finds that the probation officer's calculations and conclusions are correct and that the advisory guidelines range is as follows: A Total Offense Level of 17. A Criminal History Category of V. An imprisonment range of 46 to 57 months. A supervised release range of up to three years. And a fine range of ten thousand up to $95,000. And the Court finds that restitution is not applicable. Understanding that there's a pending motion for downward variance, does Defendant have any objections to the Court's calculation of the advisory guidelines range which must serve as our starting point?

MR. COLLEY: No objection, your Honor.

THE COURT: Any objections to the calculations, Mr. Rancourt?

MR. RANCOURT: No, your Honor.

THE COURT: The Court will use and start with that range. So let's turn to that pending motion for downward variance.

Mr. Colley, my practice is to provide counsel for the Government and Defendant a 3553(a) factor-by-factor analysis in support of its tentative determination. Then I'll invite argument from counsel as long as it is not cumulative of the written submissions. So here, the Court is considering Defendant's sentencing memorandum and construed it as a motion for downward variance. That was filed timely as document number 47. And the Court is also considering the Government's response in document number 48.

First, Section 3553(a)(1), which requires the Court to consider the history and characteristics of the Defendant. Here, Defendant argues his young age should be a mitigating factor, but during his relatively short adulthood, Defendant has already accumulated numerous prior convictions. Defendant's criminal history includes convictions for Possession of Marijuana, Evading Arrest or Detention, twice. Unlawfully Carrying a Weapon, twice. Unauthorized use of a Motor Vehicle.

Assault of a Pregnant Person and Possession of a Controlled Substance. This is all detailed in PSR paragraphs 43 through 50. Defendant's conviction for Possession of Marijuana occurred after officers found him in possession of drugs and a loaded stolen handgun with an extended magazine and an additional loaded magazine as detailed in PSR 43. Defendant's conviction for Unlawfully Carrying a Weapon involved reports that Defendant was shooting at and threatening another person while holding a firearm. During a search incident to arrest, officers also located crack cocaine on Defendant's person. That's detailed in PSR paragraph 47. Yeah, I think I may have said shooting. I meant to say shouting. So that should be stricken. Shouting, s-h-o-u-t-i-n-g. And that's detailed in PSR paragraph 47. As part of that search incident to arrest, they also searched Defendant's vehicle and located another firearm, body armor, suspected marijuana and a digital scale. This is also appearing in PSR paragraph 47.

Defendant was convicted of Assault of a Pregnant Person after he attacked the mother of his unborn child and Defendant reportedly held her down, choked her, slapped her and took her phone so she could not call police or 911. A video even showed

Defendant push and pull the women's head after grabbing her by the hair, as detailed in PSR paragraph 48.

Defendant's second conviction for Evading Arrest as well as his conviction for Possession of a Controlled Substance involved him speeding away from a traffic stop in a borrowed car with a bag of suspected methamphetamine. This is detailed in PSR paragraphs 49 through 50.

Even though Defendant is young, his myriad convictions, many of which involve deadly weapons, are extremely aggravating. The Court weighs the 3553(a)(1) facts and factors accordingly.

Now, pursuant to Section 3553(a)(1) and (a)(2)(A), the Court must consider the nature and circumstances of the offense to reflect the seriousness of and to provide just punishment for that offense. Here, Defendant possessed multiple firearms despite being a convicted felon, and his prior convictions include Unauthorized Use of a Motor Vehicle and Assault of Pregnant Person. Specifically, officers found an un-serialized 7.62 caliber AR-style pistol with Defendant's DNA on it. Also, it was found at a residence where Defendant was then located, as detailed in PSR paragraph 16.

Officers also found drug paraphernalia and marijuana at that residence. Officers later found an Anderson manufacturing model AM-15 or AM-15 multi-caliber pistol in a hidden compartment underneath the bar of the kitchen. Photos of Defendant's social media showed him holding firearms. Messages, photos and videos including discussions in which Defendant offered to buy firearms and sell marijuana and other drugs. This is detailed in PSR paragraphs 18, 19, 20 and 21.

The Court finds that Defendant's illegal possession of multiple firearms likely in connection with possession of controlled substances must be weighted as extremely aggravating in this case.

Finally, Section 3553(a)(2)(A), (a)(2)(B) and (a)(2)(C), whereby the Court must promote respect for the law, afford adequate deterrence to criminal conduct and protect the public from further crimes of the Defendant. Here, Defendant has continued to possess, buy or sell firearms even after an encounter with law enforcement on August 2nd of 2022.

Defendant's persistence in criminal ventures causes the Court to find that he would have continued in criminality but for the intervention of

law enforcement. For those reasons and reasons detailed in the PSR, the Court finds that the 3553(a)(2)(A), (a)(2)(B) and (a)(2)(C) facts and factors are extremely aggravating in this case. For these reasons, the Court finds, at least tentatively, that a non-guidelines downward variance to below 46 months' imprisonment is insufficient to give adequate weight to the aforementioned 3553(a) factors deemed aggravating.

Now, Mr. Colley, do you have any additional information or argument responsive to that tentative determination that would not be cumulative?

MR. COLLEY: Nothing that isn't cumulative, your Honor.

THE COURT: Anything from the Government?

MR. RANCOURT: No, your Honor.

THE COURT: So the Court adopts its tentative determination as its final finding that a non-guidelines downward variance to below 46 months' imprisonment is not sufficient or appropriate pursuant to the 3553(a) factors previously identified, and the Court hereby overrules any of Defendant's objections or motions in favor of that downward variance.

Now, you have my ruling on variance. Let's turn to statements, final arguments and allocution, in that order.

Mr. Rancourt, does the Government have any victim impact statements to present?

MR. RANCOURT: No, your Honor.

THE COURT: Did the Government otherwise comply with the victim consultation requirements?

MR. RANCOURT: Yes, your Honor.

THE COURT: Now, Mr. Colley, here, the Court did receive two character statements in written form from Erica Frazier, identified as Defendant's sister, and Kimberly Harper, identified as Defendant's mother. Do you intend to present any character statements through live testimony?

MR. COLLEY: No, your Honor.

THE COURT: Do you have any additional untimely character statements to submit in written form?

MR. COLLEY: No, your Honor.

THE COURT: So the Court will give appropriate weight to the letters submitted by Ms. Frazier and Ms. Harper. And those will be weighed by the Court in its final analysis.

Now, regarding arguments. The Court has

determined that a sentence within the advisory guidelines range is appropriate, but that's without prejudice to either party arguing for a particular point within the range. If you make an untimely motion for variance, it must be supported by the 3553(a) factors. If you make an untimely motion for departure, you must identify the relevant departure section. And please recall that an untimely motion may be overruled simply because it's untimely.

With those guardrails in place, Mr. Rancourt, you may proceed.

MR. RANCOURT: Yes, your Honor. For the reasons stated in the Government's response to the Defendant's Motion for Downward Variance, we do respectfully request a sentence at the top of the advisory guidelines range of 57 months. Thank you.

THE COURT: Okay. So you are incorporating by reference the reasons and arguments appearing in document number 48?

MR. RANCOURT: Correct.

THE COURT: Okay. The Court will consider those as if made at the sentencing hearing.

So Mr. Colley, I have your sentencing memorandum, but now you may make whatever final argument you deem necessary.

MR. COLLEY: Thank you, your Honor. We respect the Court's ruling on our downward variance request. We would just respectfully disagree with the Government; and based upon the Defendant's young age, his acceptance of responsibility and his three young children, we would ask for a sentence at the lower end of the range of 46 months. Thank you, your Honor.

THE COURT: Okay. So I'll do something similar here and incorporate by reference any of the arguments relevant to the balancing of 3553(a) factors that already appeared and were submitted through the sentencing memorandum. So the Court will consider those arguments as timely submitted in document number 47. Even though the Court overruled downward variance, those can also be weighted in the Court's final analysis of the 3553(a) factors. And the Court will do so and add those written arguments to the oral argument presented by defense counsel at the sentencing hearing.

Now, Mr. Gibbs, you have an absolute right to allocute at this federal sentencing hearing. Allocution means you can tell the Court information you think is relevant to the sentencing decision. You can read aloud a prepared written statement.

You can present arguments that you think the Court should consider. You can present facts that you think are important to your case. There's no limit to what you can tell the Court through allocution, but it is also true that you can never be forced to allocute. Is there anything you would tell the Court at this time in the form of an allocution?

THE DEFENDANT: No, sir.

THE COURT: Do you understand that you have an absolute right to allocute at this sentencing hearing?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Are you knowingly and voluntarily waiving that right of allocution after consulting with competent and effective counsel?

THE DEFENDANT: Yes, sir.

THE COURT: And Mr. Colley, do you agree that your client has knowingly and voluntarily waived his right of allocution?

MR. COLLEY: Yes, your Honor.

THE COURT: The Court so finds. Mr. Colley, any reason known to Defendant why sentence cannot be imposed at this time?

MR. COLLEY: No, your Honor.

THE COURT: Any reason known to the

Government?

MR. RANCOURT: No, your Honor.

THE COURT: Having considered the permissible factors set forth at 18 U.S.C. Section 3553(a), the advisory guidelines range, the conduct admitted in the factual resume, the capable and effective assistance of defense counsel which significantly reduced Defendant's possible sentencing exposure and all mitigating and aggravating factors, it is the judgment of this Court that the Defendant, Joseph Labrone Gibbs, is hereby committed to the custody of the Federal Bureau of Prisons for a period of 57 months. This represents a sentence within the advisory guidelines range. The Court considered an upward variance in this case on its own motion given the potential lethality and violence reflected in some of Defendant's criminal history and with an emphasis on the protect the public element of 3553(a)(2)(A), (a)(2)(B) and (a)(2)(C), but the Court was persuaded by capable and effective assistance through Mr. Colley that this Court need go no higher than the advisory guidelines range. The Court does not order a fine because Defendant lacks the financial resources or future earning capacity to pay a fine.

The Court does order a one-time mandatory special assessment of one hundred dollars which is due and payable immediately.

Now, Defendant mentions an undischarged sentence in his memorandum, though, I did not receive any PSR paragraph specific to pending charges. Is there a case number or citation that I can reference in determining whether to run this sentence concurrent or consecutive to pending charges?

Mr. Colley, I'll turn to you first since you're defense counsel.

MR. COLLEY: Yes, your Honor. I believe the cause number is 32616A.

THE COURT: And where is that pending?

MR. COLLEY: Potter County, I believe.

THE COURT: And do you argue that that pending Potter County case is related or unrelated to the instant offense of conviction?

MR. COLLEY: Unrelated.

THE COURT: Okay. And typically, unrelated offenses are run consecutive. I'll hear your argument that this Court should invoke its authority to order it concurrent instead.

MR. COLLEY: As argued in our sentencing

memorandum, defense counsel believes that those convictions have been adequately accounted for in his criminal history category, so we would just argue that those run concurrently to sentences he's already serving. He was brought here on a bench warrant while he was actively serving in TDCJ for those offenses. So for those reasons, we would ask they be run concurrently. Thank you, your Honor.

THE COURT: And I'll add those to the reasons argued in the sentencing memorandum filed in document number 47. Response from the Government?

MR. RANCOURT: Yes, your Honor. The Government took defense's request to run this sentence concurrently with the TDC sentence that he's already serving in state custody. Those two cause numbers as I referenced to Mr. Colley. One is cause number 32616A that he was already sentenced in the 47th Judicial District as spelled out in paragraph 48. The other is the evading arrest or detention conviction referenced in PSR paragraph 49. That's cause number 085067-B-CR. And the Defendant was sentenced in the 181st Judicial District Court in Potter County, Texas, for the reasons stated in the Government's response to the defense motion, we believe it would be inappropriate to run this

sentence concurrently with either of those sentences, your Honor.

THE COURT: And that's because of their unrelated nature?

MR. RANCOURT: Correct, your Honor.

THE COURT: Okay. And what the Fifth Circuit has told us about that. Here, the Court finds the Government has the better argument and because of the relatedness analysis, the Court will run this sentence consecutive to the aforementioned unrelated offenses, specifically case number 32616A, presently pending in the 47th Judicial District court of Randall County, Texas, in reference to PSR paragraph 48 and case number 085067-B-CR pending in the 181st Judicial Court of Potter County, Texas, and referenced in PSR paragraph 49.

Now, regarding forfeiture, pursuant to 18 U.S.C. Section 924(d) and 28 U.S.C. Section 2461(c) and subject to the provisions of 21 U.S.C. Section 853(n), it is hereby ordered that Defendant's interest in the following property is condemned and forfeited to the United States. An Anderson manufacturing model AM-15 multi-caliber pistol, serial number 21150632, including any additional ammunition, magazines and/or firearms, accessories

recovered.

Now, having made the required individualized determination, the Court further orders that upon release from imprisonment, Defendant shall be placed on supervised release for a term of three years. While on supervised release, Defendant shall comply with the mandatory conditions listed at Section 3583(d) and Section 5D1.3(a), the standard conditions listed at Section 5D1.3 and the following discretionary and special conditions which are derived from Sections 5D1.3(b)(1) and (3) and are reasonably related to the Section 3553(a) factors that apply at sentencing. Number one, the Defendant shall not communicate or otherwise interact with any known member of the Hamlet Hillside Players Gang without first obtaining the permission of the probation officer. Number two, the Defendant shall participate in an outpatient program approved by the probation officer for treatment of narcotic, drug or alcohol dependency that will include testing for the detection of substance use, abstaining from the use of alcohol and all other intoxicants during and after completion of treatment and contributing to the costs of services rendered copayment at a rate of at

least $25 per month.

Now, Mr. Colley, did you and your client receive a timely copy of that notice of intent to impose conditions of supervised release?

MR. COLLEY: Yes, your Honor.

THE COURT: Did you have a full and complete opportunity to review that notice with your client?

MR. COLLEY: Yes, your Honor.

THE COURT: And did you specifically review the standard conditions that appear on pages three and four of the written notice?

MR. COLLEY: Yes, your Honor.

THE COURT: Any objections?

MR. COLLEY: No, your Honor.

THE COURT: And did you explain and review the discretionary and special conditions appearing on written page four and pronounced orally at sentencing?

MR. COLLEY: Yes, your Honor.

THE COURT: Any objections?

MR. COLLEY: No, your Honor.

THE COURT: And Mr. Rancourt, did the Government receive a timely copy of that written notice?

MR. RANCOURT: Yes, your Honor.

THE COURT: Any objections?

MR. RANCOURT: No, your Honor.

THE COURT: The Court did receive and did review a fully executed copy of the notice. It is dated February 10, 2026. It bears the signature of the Defendant, defense counsel and this Court. It is made a part of the record in this case and in any record on appeal. The notice and conditions of supervised release stated therein are hereby adopted ordered and imposed as pronounced by the Court at the hearing.

The Court will now enter its statement of reasons. Because the Defendant's advisory guidelines range exceeded 24 months, this Court will state with particularity its reasons for imposing sentence at a particular point within that range. And this is required by 18 U.S.C. Section 3553(c)(1). Here, the sentence is sufficient but not greater than necessary to comply with the statutory purposes set forth at Section 3553(a). Here, the Court incorporates by reference its weighting of the 3553(a) factors in adjudicating Defendant's Motion for Downward Variance. Additionally, the Court will note, again, that the

Court considered an upward variance on its own motion because of the criminality, criminal history and potential lethality of some of that history, with attention to the protect the public element of 3553(a)(2)(A), (a)(2)(B) and (a)(2)(C), but defense counsel capably and effectively persuaded the Court that the Court need go no further than the advisory guidelines range for the reasons argued in Defendant's sentencing memorandum in document number 47 and argued at the sentencing hearing. Though the Court disagreed with downward variance, I was persuaded not to upwardly vary because of defense counsel's arguments to the Court.

This Court further finds that supervised release is necessary in this case. After making the required individualized assessment, the Court imposed a term of supervised release for added deterrence and protection based on the individualized and particularized facts of this case and this Defendant. At all times, the Court was guided by Section 5D1.1 of the guidelines and associated commentary in making that individualized assessment, and the Court imposed a term of supervised release for reasons that echo in the statement of reasons. And the Court in part

considered Defendant's history of drug use and abuse in requiring supervised release in this case. The Court imposed the standard conditions derived from Section 5D1.3(b)(2) and did so without any revision or amendment because the Court made the individualized determination that revision or amendment was not necessary and would not benefit Defendant. In light of the Fifth Circuit's opinion in *Diggles*, the Court adopted, imposed and ordered those discretionary conditions because they are consistent with 3583(d)(1), (d)(2) and (d)(3). And the Court expressly states that the discretionary conditions involve no greater deprivation of liberty than is reasonably necessary, consistent with 3553(a)(2)(B), (a)(2)(C) and (a)(2)(D).

Also, as part of its individualized determination, the Court imposed discretionary conditions to account for Defendant's substance use and abuse as evident in PSR paragraph 69 and elsewhere in the PSR and also to account for Defendant's criminal history. The Court has now entered its statement of reasons. Any objection, Mr. Colley?

MR. COLLEY: No objection, your Honor.

THE COURT: Any objection, Mr. Rancourt?

MR. RANCOURT: No, your Honor.

THE COURT: The Court hereby orders the sentence imposed as stated. Finally and importantly, because there were pending objections that were waived but would otherwise be overruled anyway, the Court states emphatically that even if the correct advisory guidelines range was not considered, the Court would have imposed the same sentence had it not made the error and would have done so for the same reasons given during the sentencing hearing, regardless and irrespective of the applicable guidelines range.

Now, Mr. Colley, let's take up medical, vocational and residential recommendations. Starting with medical. PSR paragraphs 67, 68, 69 and 70 reflect Defendant has respiratory issues that should be addressed, including asthma and allergies. So I will make a recommendation for medical evaluation. He's also stated a willingness to pursue substance abuse treatment. Anything specific to mental health?

MR. COLLEY: No, your Honor.

THE COURT: Okay. And are there any medications that have proved helpful for any of those conditions?

MR. COLLEY: No, your Honor.

THE COURT: Okay. And on substance abuse treatment, are you requesting the most aggressive substance abuse treatment consistent with his security classification?

MR. COLLEY: Yes, your Honor.

THE COURT: Okay. And any objection, Mr. Rancourt?

MR. RANCOURT: No, your Honor.

THE COURT: This Court does recommend that the Defendant be allowed to participate in a full medical evaluation to address asthma, respiratory issues and allergies, and the Court also recommends the most intensive substance abuse treatment deemed consistent with his security classification and eligibility, including residential treatment if Defendant so qualifies.

On vocational training, PSR paragraph 71 through 72 did not reflect a specific interest or field, but he did express a moderate interest in receiving vocational training. Any request that you would enter at this sentencing hearing?

MR. COLLEY: Yes, your Honor. After speaking with my client, he did take some classes at AC involving computer engineering. So he would like

to do that wherever he's placed. Specifically he requested Pollock FCC which is in Grant Parish, Louisiana. They have microcomputer applications and building trades. Outside of that, if he were to qualify, just depending on his BOP designation, he does have family in Oklahoma. So if he were to qualify, FTC OKC would also another suggestion. But specifically Pollock FCC due to the programs they offer.

THE COURT: Okay. And how is that spelled?

MR. COLLEY: P-o-l-l-o-c-k. And I believe it's in Grant Parish, Louisiana.

THE COURT: Okay. And I'm -- in the event that his security classification doesn't match that facility, is that FPC Prison Camp?

MR. COLLEY: Pollock is FCC. The Oklahoma City I mentioned, that is a camp.

THE COURT: Okay. Out of concern that his security classification might not match.

MR. COLLEY: Right, that's what we believed as well, which is why Pollock FCC would be the first preference.

THE COURT: Okay. Any objection to a final alternative recommendation for El Reno because

it is in Oklahoma?

MR. COLLEY: I'm sorry?

THE COURT: Any objection to a final alternative recommendation for El Reno simply because it's in Oklahoma?

MR. COLLEY: That's okay. Yes, your Honor.

THE COURT: Any objection to those combined requested recommendations on residence and training?

MR. RANCOURT: No, your Honor.

THE COURT: This Court does recommend emphatically that the Defendant be allowed to pursue and continue his education. He's already completed some coursework and does have some familiarity with computers and computer engineering, and the Court finds Defendant is a good candidate for continued training in computers.

MR. COLLEY: Thank you, your Honor.

THE COURT: The Court further recommends in descending order, FPC Oklahoma City; FCC Pollock FCC; and finally, FCI Reno or El Reno, to give Defendant relative proximity to family and friends which the Court deems essential to Defendant's success.

MR. COLLEY: Thank you, your Honor.

THE COURT: So those are made in the alternative in descending order. Are there pending Indictments or charges to dismiss?

MR. RANCOURT: Yes, your Honor. Pursuant to the plea agreement and having proceeded to sentencing on Count II, the Government at this time moves to dismiss Count I of the Indictment as to this Defendant only.

THE COURT: The Court grants the motion and orders Count I of the Indictment to be dismissed as to this Defendant only and pursuant to this judgment.

Now, Mr. Gibbs, under your plea agreement, you have waived the right to contest the sentence or appeal this sentence or appeal a -- in a collateral proceeding with four exceptions. Number one, you may directly appeal an arithmetic error at sentencing. Number two, you may directly appeal a sentence exceeding statutory maximum. Number three, you may challenge the voluntariness of your guilty plea. And number four, you may claim ineffective assistance of counsel.

Now, if you decide to appeal, your notice of appeal must be filed with this Court within 14

days, and that's within 14 days of the date judgment is entered or within 14 days of the Government filing its appeal. Also, and importantly, if you decide to pursue an appeal, you have an absolute right to apply for leave to appeal in forma pauperis. This is sometimes abbreviated IFP. If IFP status is granted, you may be allowed to pursue that appeal at no cost to yourself but instead at a cost to the Government. Mr. Colley, did you and your client receive a timely copy of the notice of right to appeal?

MR. COLLEY: Yes, your Honor.

THE COURT: Did you specifically explain that 14-day period that applies to the notice of appeal?

MR. COLLEY: Yes, your Honor.

THE COURT: And does your client have any objections to the appellate rights arising under the plea agreement, including the plea waiver?

MR. COLLEY: No objection, your Honor.

THE COURT: I think I said plea waiver. I meant to say appellate waiver. Any objection to the appellate waiver?

MR. COLLEY: No objection, your Honor.

THE COURT: Okay. Any objection to the

appellate rights described in this notice, Mr. Colley?

MR. COLLEY: No, your Honor.

THE COURT: And Mr. Rancourt, did the Government receive a timely copy of that notice?

MR. RANCOURT: Yes, your Honor.

THE COURT: Any objections?

MR. RANCOURT: No, your Honor.

THE COURT: This Court did receive and did fully review a timely executed copy of the notice of right to appeal. It is dated February 10, 2026. It bears the signature of the Defendant, defense counsel and this Court. It is made a part of the record in this case and in any record on appeal.

And Mr. Gibbs, I do want to caution you that this notice of right to appeal is different than the notice of appeal. If you intend to file a notice of appeal, please consult with counsel. He can explain the deadlines and deliverables. Anything further from the Government?

MR. RANCOURT: No, your Honor.

THE COURT: Anything from the Defendant?

MR. COLLEY: Nothing further, your Honor.

THE COURT: I do want you -- I do want to forward a moment of reunion for Mr. Gibbs and family

that are assembled in the gallery, but I want to give strict instructions. So members of the family must remain in the gallery at all times. You cannot approach or touch the Defendant. But I do want to give you a chance to communicate with one another since you have endured now three sentencing hearings in one day. I do want to afford a reunion, but family and friends must stay in the gallery. Defendant must stay on this side of the bar. Please follow the instructions of the marshals at all times, but I do want to afford you a brief moment of reunion together. So we'll take a five- or ten-minute break for that. With that, Mr. Gibbs, I do want to encourage you to take advantage of the resources in our federal system. I know other systems have failed you in the past, but this does represent an opportunity to finally focus on yourself. Some of the education that we talked about today, any treatments that you need, so make good use of this time. And it's my intention to never again see you in federal court.

THE DEFENDANT: Thank you.

THE COURT: With that, I wish you good luck, and I do want to afford you a brief moment of reunion. Counsel are excused and the Court is

adjourned for the remainder of the day.

GALLERY MEMBER: Thank you, Judge.

[PROCEEDINGS CONCLUDED AT 3:05 P.M.]

* * * * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. I further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the United States.

/s/ Christine M. Orr, RPR  4-20-26
Official Court Reporter  Date